IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>GEM MANAGEMENT, LLC,<br>    Defendant. | CIVIL ACTION NO.<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Charging Party, Rebecca Wardle. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission ("EEOC") alleges that Defendant GEM Management, LLC ("GEM") subjected Wardle to sexual harassment resulting in her constructive discharge.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Kentucky.

**PARTIES**

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.     At all relevant times, Defendant, GEM Management, headquartered in North Carolina, has continuously been doing business in the State of Kentucky and the City of Sanford, and has continuously had at least 15 employees.

5.     At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**ADMINISTRATIVE PROCEDURES**

6.     More than thirty days prior to the institution of this lawsuit, Rebecca Wardle filed a charge with the Commission alleging violations of Title VII by Defendant GEM Management.

7.     On March 6, 2024, the Commission issued to Defendant GEM Management a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in

informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.   The Commission engaged GEM Management in communications in an effort to secure a conciliation agreement.

9.   On April 2, 2024, the Commission issued to Defendant GEM Management a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10.  All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11.  Since at least October 7, 2022, Defendant GEM Management has engaged in unlawful employment practices at its Sanford, Kentucky properties, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000e-2(a)(1) by subjecting Wardle to a hostile work environment based on her sex, female.

12.  GEM Management hired Wardle on or about April 18, 2022.

13.  From April 18, 2022, through April 25, 2023, Wardle worked as a site manager for GEM Management's Sanford, KY properties.

14.  Beginning on or about October 7, 2022, Wardle's coworker, a GEM Management maintenance worker, began subjecting Wardle to unwelcome sexual conduct, advances, and requests.

15.  This conduct included propositioning Wardle for sex, asking her about her sexual activity, including whether "someone was fulfilling [her]

3

needs," stating that he "was lonely and needed his needs met," and speaking to Wardle in demeaning and vulgar ways.

16. Wardle's harasser also made Wardle feel physically intimidated and threatened by telling her that he kept a gun in his truck and that he "watched her," coupled with repeatedly coming to Wardle's office where she worked alone to linger close to her putting her in fear of her personal safety.

17. This conduct happened in Wardle's office and on site at apartments Wardle managed at which her harasser performed maintenance duties.

18. Wardle did not invite this conduct and repeatedly told her harasser that it was unwelcome.

19. On or around October 7, 2022, Wardle complained to her direct supervisor and GEM regional manager about harassment. She requested that her schedule be changed so that she no longer had to interact with her harasser at work.

20. Unbeknownst to Wardle at the time, her direct supervisor had a familial relationship with her harasser.

21. GEM briefly permitted scheduling changes, but quickly reversed course after approximately two weeks, telling Wardle that scheduling changes were no longer available because of potential tenant confusion.

22. Wardle was directed to continue working the same shifts as her harasser and to continue working directly with him.

23. The harassment continued, with Wardle's harasser continuing to make sexual requests and threatening statements and conduct, including by coming to her office without a reason to be there, making her feel physically intimidated and in fear for her safety.

24. Wardle was subject to some sexually explicit comments or physically intimidating behavior nearly every day that she worked from October 2022 through April 2023.

25. Physical threats escalated after Wardle's October 2022 complaint. Wardle's harasser emphasized the presence of his gun, telling Wardle that if needed he would use a silencer on his gun so that she would not "see him coming."

26. Wardle continued to complain about harassment to her direct supervisor after her complaint in October 2022 failed to remedy the harassment.

27. In January 2023, after another complaint, Wardle received her first request for a written complaint from GEM human resources.

28. Despite her direct supervisor's discouragement, Wardle submitted a written complaint on January 10, 2023.

29. Wardle also received complaints about her harasser from GEM tenants who experienced threatening and concerning behavior from the same employee. Wardle told her direct supervisor about tenant complaints.

30. Despite Wardle's complaints and complaints from tenants, GEM failed to take any corrective action against the harasser and failed to protect Wardle from further harassment.

31. The harassment continued and worsened after her January 2023 complaint.

32. On April 24, 2023, Wardle's direct supervisor, despite knowledge of Wardle's repeated complaints of harassment and despite Wardle's protest, directed Wardle to go to an empty apartment with her harasser.

33. Once there, Wardle's harasser physically cornered her and told her that he knew about her harassment complaints and that he would find her, shoot her, and torture her if her complaints impacted his employment or his marriage.

34. In fear for her life, Wardle immediately left the apartment and resigned from her position at GEM Management on April 25, 2023, telling managerial staff that she did not want to leave her job but that her harasser had learned about her complaints against him, that her requests not to work with him because of sexual harassment were not honored, and that he now had made serious statements that put her in fear for her and her family's safety and forced her to resign against her wishes.

35. Wardle's harasser continued to make threatening phone calls to Wardle after she resigned. Wardle complained about continued contact to GEM's managerial staff but received no response.

36. The effect of the practices complained of in the above paragraphs has been to deprive Wardle of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

37. The unlawful employment practices complained of in the above paragraphs were intentional.

38. The unlawful employment practices complained of in the above paragraphs were done with malice or with reckless indifference to Wardle's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant GEM Management, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from violating Title VII of the Civil Rights Act of 1964.

B. Order Defendant GEM Management to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant GEM Management to make whole Charging Party Rebecca Wardle, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to training requirements, notice posting, and policy revisions.

D.   Order Defendant GEM Management to make whole Charging Party Wardle by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including debt incurred and job search expenses, in amounts to be determined at trial.

H.   Order Defendant GEM Management to make whole Charging Party Wardle whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain, suffering, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

I.   Order Defendant GEM Management to pay punitive damages for its malicious and reckless conduct, as described in the paragraphs above, in amounts to be determined at trial.

J.   Grant such further relief as the Court deems necessary and proper in the public interest.

K.   Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE

Deputy General Counsel

KENNETH L. BIRD
Regional Attorney

NANCY D. EDMONDS
Assistant Regional Attorney

*s/ Kathleen Bensberg*
Kathleen Bensberg
(IN Attorney No. 35437-49)
Trial Attorney
Indianapolis District Office
115 W Washington St S Tower Ste 600
Indianapolis, IN 46204
Tel.: 463-999-1196
Kathleen.bensberg@eeoc.gov