UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Civil Action No. 5:24-cv-00199-GFVT |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| GEM MANAGEMENT, LLC, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION AND RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

**I.      Defendant's response fails to refute alleged discovery shortcomings.**

Defendant's response to the pending motion to compel is most notable for what it does not do. Nowhere does Defendant attempt to refute most of the specific allegations regarding its discovery shortcomings as set forth in Plaintiff's motion. Specifically, Defendant makes no effort to dispute the following assertions:

- Defendant used a list of ten employee names as search terms rather than as custodians whose email accounts should be searched. Doc. No. 26-1, Page ID# 103.

- Defendant engaged in a self-collection of ESI, with counsel only suggesting search terms to Defendant but taking no active, affirmative role in the collection or search, including to confirm which terms were applied to which email accounts. Doc. No. 26-1, Page ID# 103.

- Defendant used deficient search terms (the names of ten custodians rather than appropriate, effective search terms). Doc. No. 26-1, Page ID# 104.

- Defendant applied search terms to only a few email accounts and not to the accounts of the most important custodians (Wardle, Burns, Stewart and Smith). Doc. No. 26-1, Page ID# 104.

- Defendant produced only 22 native emails and failed to produce any native emails from the time period that Rebecca Wardle was an employee (October 7, 2022 through April 25, 2023). Doc. No. 26-1, Page ID# 104.

- Defendant seemingly searched only the wrong @fitchirick.com email addresses instead of the correct @gemmanagement.net addresses that were actually in use during Wardle's employment. Doc. No. 26-1, Page ID# 112-113.

The failure to respond to these points supports Plaintiff's claim that Defendant did, indeed, fail to search all relevant custodian email accounts and failed to utilize search terms that would yield responsive results. Additionally, Defendant's failure to address each point, and the overall lack of clarity offered by Defendant's response, supports Plaintiff's claim that Defendant's counsel permitted Defendant to engage in self-collection, such that Defendant's counsel is unable to say with certainty the precise steps taken to search for and identify responsive documents. These are violations of counsel's basic discovery obligations. *Waskul v. Washtenaw Cmty. Mental Health*, 569 F. Supp. 3d 626, 630, 636 (E.D. Mich. 2021). *See also Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18CV357, 2018 WL 6308849, at *5 (S.D. Ohio Dec. 3, 2018) quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008) ("the party selecting the [search] methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented").

Defendant's response also fails to address Request for Production No. 17, which was the subject of Item 7 on the Court's 1/13/26 provisional order. Doc. No. 22. Request for Production No. 17 requests, "any documents that show Defendant's financial status, nationwide, including income and expense reports, profit and loss statements, balance sheets, federal corporate tax returns, and annual reports from the years 2023 through the present." Defendant has not produced the documents responsive to this request, nor provided any explanation for withholding the same in its response.

Finally, the Court should note that nowhere does Defendant allege that any of the discovery requests at issue in Plaintiff's motion seek irrelevant information. The relevancy of all of the requests is conceded.[1] Instead, as discussed below, Defendant repeatedly asserts its boilerplate objections that the requests are overbroad, unduly burdensome or disproportional to the needs of the case, without presenting the bases for those objections.

II.    **Defendant's response provides general denials and boilerplate objections with no supporting analysis.**

Instead of refuting the allegations contained in Plaintiff's motion, by stating with specificity its search methodology and explaining why the methodology was sufficient, Defendant's response instead: 1) provides the Court with five pages of procedural history, 2) provides the court with a three page recitation of the Federal Rules of Civil Procedure, and 3) repeatedly broadly refers to Defendant's boilerplate objections and generic assertions that its February 17, 2026, production was sufficient to comply with the Court's January 13, 2026, order. Plaintiff will nonetheless briefly address Defendant's response as it pertains to specific interrogatories and requests for production.[2]

**A. Request for Production No. 5**

With respect to Request for Production No. 5, which seeks documents relating to Wardle's scheduling requests, scheduling decisions and site assignments, Defendant cites its objections that the request is overly broad, unduly burdensome, and calls for the production of documents/identification of materials that are disproportionate to the needs of the case. These objections are boilerplate, unsupported by facts or evidence, and thus have no legal effect. *Davis v.*

---

[1] "Irrelevant" or "not relevant" do not appear once in Defendant's entire response or Defendant's 2/17/26 letter. Doc. No. 26-6. Defendant twice asserts that a request does not have a "relevant temporal proximity" (another way of saying overbroad), but never claims that any request does not seek relevant information.

[2] For consistency, in this reply Plaintiff will progress through the interrogatories and requests for production in the same order it did in Doc. No. 26-1, which mirrors the order in which they were addressed in the Court's 1/13/26 order (Doc. No. 22).

*American Highwall Mining, LLC*, 570 F.Supp.3d 491, 495 (E.D. KY. 2020); *In re Heparin Products Liability Litigation*, 273 F.R.D. 399, 410 (N.D. Ohio. 2011), citing *Kafele v. Javitch, Block, Eisen & Rathbone*, 2005 WL 5095186, *2 (S.D. Ohio April 20, 2005).[3]

Defendant then asserts that despite the objections, it was nonetheless unable to identify responsive material within its possession, custody or control and that it has complied with the Court's 1/13/26 Order and the scope of FRCP 34(a)(1). However, its search methodology was deficient. Defendant does not dispute that it conducted a self-collection, with no oversight by defense counsel; that it failed to search the most relevant custodian email accounts; or that it used ineffective search terms: the names of 10 custodians rather than terms likely to identify documents responsive to Request No. 5, such as "schedule", "change" near "schedule" or "days", "opposite days", "different days" or "alternate days." It is evident that the failure to search relevant email accounts with appropriate search terms would result in the non-production of responsive documents, but Plaintiff also made a showing of specific documents that are missing. As explained in Plaintiff's motion, text messages between Wardle and Stewart, previously produced by Plaintiff, specifically reference scheduling-related emails between them. Doc. No. 26-14, Page ID# 234 (3/8/23 text exchange). Yet, Defendant offers no explanation for its failure to produce the emails or what it did to look for them.

Defendant also suggests, without directly saying, that a data retention problem related to Defendant's late-2022 transition away from a third-party human resources record management vendor, ProLiant, had some bearing on Defendant's failure to produce responsive documents. *See* Doc. No. 28 at Page ID# 250-51, 254. But Defendant fails to explain the connection. Defendant states that ProLiant stored onboarding documentation, employee handbook acknowledgments,

---

[3] Defendant's brief repeats the pattern of making boilerplate, unsupported objections for nearly every request for production and interrogatory discussed.

4

performance reviews and conversations, timecards and payroll history, employee tax filings, and benefit records. Doc. No. 28-2 at PageID# 269. But Defendant has already produced timecard records for Wardle and Burns; thus, the purported loss of data from ProLiant did not, in fact, prevent Defendant from producing those documents. Moreover, Defendant does not explain how loss of the types of records listed above has prevented Defendant from searching relevant custodian email accounts or otherwise producing documents responsive to this request.

Thus, Defendant has failed to demonstrate it should not be compelled to conduct an adequate search of relevant custodian email accounts for documents responsive to this request.

**B. Request for Production No. 13**

With respect to Request for Production No. 13, which requests all documents reflecting communications (including emails and text messages) between GEM staff and any other person about Wardle or the events underlying the lawsuit, Defendant cites the same meritless, boilerplate objections, without supporting evidence or analysis.

Nonetheless, Defendant generically asserts without specificity that it produced the responsive materials it was able to identify and claims it complied with the Court's order and FRCP 34(a)(1). On the contrary, responsive material known to exist has not been produced and Defendant's effort to search for the same are highly questionable. Wardle worked for Defendant for a limited 7 ½ month time window during which she and at least two other individuals (Jennifer Taylor and Elisha Sutton) made sexual harassment complaints about Burns. Defendant does not dispute that it did not bother to run searches on relevant email accounts in use during that time period (including those of Wardle, Burns, Stewart, and Smith), and ran no searches using "Sutton", "Taylor" or the names by which complaints about Burns would most likely refer to him ("maintenance man" or "Travis"). Emails and harassment complaints specifically referenced by

GEM employees at deposition have not been produced with no explanation offered. Doc. No. 26-9, Page ID# 195-7, 219, 220.

As with Request No. 5, Defendant also references the ProLiant data loss issue (Doc. No. 28 at Page ID# 254) but fails to explain how this data loss prevented Defendant from searching relevant custodian email accounts or otherwise producing documents responsive to this request.

Thus, Defendant has failed to demonstrate it should not be compelled to conduct an adequate search of relevant custodian email accounts for documents responsive to this request.

**C. Request for Production No. 14**

With respect to Request for Production No. 14, which requests all documents (including emails and texts) between GEM staff and anyone regarding Burns, the charge filed by Wardle, or the events underlying the lawsuit, Defendant's arguments are identical to those for Request No. 13. As such, they should be rejected for the same reasons presented above. Also, Defendant does not refute, or explain the reason for, its failure to produce responsive emails known to exist, as described in Plaintiff's motion. (See Doc. No. 26-1 at Page ID# 109-10.) A supervised search utilizing appropriate search terms, conducted on the relevant custodian email accounts (including those of Wardle, Burns, and Stewart) would likely have produced those emails. Having failed to verify such a search was ever conducted, Defendant's objection fails, and this Court should compel Defendant to conduct an adequate search of relevant custodian email accounts for documents responsive to this request.

**D. Request for Production No. 15**

With respect to Request for Production No. 15, which requested all communications received or sent by GEM personnel to any other person regarding Burns, Defendant's response is essentially identical to that for No. 14 and remains deficient for the same reasons noted above. Because Defendant has failed to demonstrate it conducted a sufficient search to meet its discovery

obligations, with effective search terms applied in a technologically-adequate method to all relevant custodian email accounts, supervised by counsel, this Court should compel Defendant to conduct such a search for documents responsive to this request.

### E. Request for Production No. 16

With respect to Request for Production No. 16, which requested all documents and communications (including emails and texts) relating to tenant complaints against Burns, Defendant asserts similar boilerplate objections, without stating the grounds for any of the objections. Defendant's objections are frivolous. The central issues in this lawsuit are sexual harassment by Burns, Defendant's knowledge of the same, and Defendant's failure to take appropriate responsive action despite knowing that Burns was in a downward spiral involving drug use, poor job performance and escalating tenant complaints, including multiple complaints for sexual harassment. Thus, tenant complaints about Burns, including other sexual harassment complaints, are relevant and discoverable.

Nonetheless, Defendant states it produced responsive material and complied with the Court's 1/13/26 order and FRCP 34(a)(1). But Defendant does not dispute that it did not search the email accounts of the most relevant custodians (Burns, Wardle, Smith, Stewart). Nor does Defendant address the failure to produce responsive documents known to exist, such as emails to and from Stewart containing complaints made by Sutton (Doc. No. 26-9, Page ID# 219-220) and paper documents maintained in physical files (Doc. No. 26-9, Page ID# 196-97, 200).

### F. Request for Production No. 26 & Interrogatory Nos. 18-20

With respect to Request for Production No. 26, which requested all internal communications related to Defendant's responses to Interrogatory Nos. 18-20, Defendant's response asserts that it initially provided responsive materials it was able to identify and was subsequently instructed (apparently by counsel) to conduct searches for responsive materials and/or

emails containing "Jerry Burns" plus "police" or the names of the 3 apartment complexes where Burns worked. Without representing that those searches were actually run or specifying which accounts they were run on, Defendant then blanketly asserts that it complied with the Court's 1/13/26 Order and FRCP 34(a)(1). Defendant also claims it has responded to Interrogatory Nos. 18-20.

These are more empty responses that pretend obvious deficiencies identified by Plaintiff do not exist. As Plaintiff identified in its motion, first, in response to No. 18, Defendant failed to provide any information regarding Elisha Sutton's complaints about Burns (despite numerous GEM employees testifying to the existence of those complaints). Second, in response to No. 19, Defendant provided an incorrect answer: Jennifer Taylor did not live in Unit # 2 of the Greensburg Apartments; Elisha Sutton did (Doc. No. 26-9, Page ID# 199) and her contact information still has not been provided. Third, in response to No. 20, Defendant answered that the only known occasion on which police were called to the property regarding Burns was January 6, 2023, despite having already produced dispatch reports indicating police were also called to property because of Burns on January 14 and 15, 2023. Documents related to Interrogatories 18-20 that are known to exist and thus are responsive to Request for Production No. 26 have also not been produced: Stewart testified she sent emails to HR regarding the January 6 police incident seeking guidance on what to do about it (Doc. No. 26-9, Page ID# 216).

**G. Interrogatory No. 16**

With respect to Interrogatory No. 16, which requested the name, property unit number, last known telephone number, and address of the tenants who lived in the 3 apartment complexes that Burns worked at between April 1, 2022 and April 25, 2023, Defendant cites its original objection that the request was unduly burdensome, but claims that it nonetheless provided responsive information for 266 tenants. Defendant then vaguely asserts "some of the requested information

8

was not available"[4], before reiterating that the request is unduly burdensome as to the issue of whether Burns sexually harassed Wardle. Defendant's response is both misleading and non-sensical. Yes, 266 names were provided – but the vast majority were irrelevant and outside of the scope of the interrogatory. Defendant inexplicably provided the names of 203 tenants or former tenants at the Wood Lane Apartments *dating all the way back to the 1990's*. Over 150 of the names were tenants outside of the requested time period. Doc. No. 26-5, Page ID# 150-163. No phone numbers were provided for any of the 25 tenants at Oakview Apartments, where Wardle and Burns worked together; all such tenants are potential witnesses in the case. Doc. No. 26-5, Page ID# 145-147. With respect to the Churchwood Apartments, 38 names were provided, many of whom resided at Churchwood outside the requested time period. But no phone number was provided for Elisha Sutton.[5]

**H. Interrogatory No. 21**

With respect to Interrogatory No. 21, Defendant's representations to the court are false. Interrogatory No. 21 contained subparts a-k, which asked for specific information for eight defendant employees. Subpart (d) required each individual's company email address and subpart (e) required "a description of steps taken to recover emails from each individual's company email account." The Court's 1/13/26 order specifically ordered Defendant to answer all subparts or state a valid objection thereto. Although Defendant represented to the court, "The Defendant's supplemental answer thereto provided the EEOC with the requested information," this is a false statement. Defendant's supplemental answer to Interrogatory No. 21 contained no information in

---

[4] How could the last known phone numbers of Defendant's tenants not be available to Defendant? Such is an interesting question that Defendant has never answered.

[5] The repeated refusal or failure for over a year to provide phone numbers for Sutton or any of the tenants at the complex where Wardle and Burns worked together, with no explanation for the same, has the appearance of Defendant intentionally trying to make it difficult for Plaintiff to contact potential witnesses in a timely manner, if at all.

response to subpart (e); no description was provided of what Defendant did to search each email account (nor did Defendant represent each account was searched). Doc. No. 26-5, Page ID# 169-172. Defendant also failed to identify any of the "@gemmanagement.net" email addresses the employees were actually using during Wardle's employment. *Id.*, Page ID# 172. Defendant references its 2/17/26 letter as containing responsive information, but the letter also fails to identify the email accounts that were searched, if any, or what search terms were used. Doc. No. 26-6. As discussed throughout this brief, it is evident that Defendant failed to conduct a search of these custodians' email accounts, but Defendant neither admits as such nor states a valid objection to doing so.

### I. Request for Production No. 23

With respect to Request for Production No. 23, which requests all documents referencing or evidencing complaints made about Burns by any tenant, employee or other individual or the investigations into those complaints, and which specified the request covered all 3 properties Burns worked at, the Court ordered, "GEM must produce the responsive documents, including documents that may be maintained in paper or that would be revealed in a proper search of ESI. If there are no additional responsive documents, GEM must state that fact as well as what searches were conducted." Doc. No. 22, ¶4. Defendant's response references its boilerplate objections that the request was overbroad and exceeded the scope of Wardle's asserted claims, but asserts that it nonetheless produced responsive materials it was able to identify after using a list of search terms that consisted of the names of ten employees. As detailed in Plaintiff's motion, this amounts to a representation that defense counsel provided Defendant with ten names, but counsel does not really know what Defendant did with those names, instead leaving Defendant to conduct a self-collection. Defendant further asserts it was advised to incorporate eleven more search terms (which were again deficient even if they were applied to all custodial email accounts, as they did not include the names

10

of Sutton or Taylor). This is another loose representation of a loose request counsel conveyed, not a factual statement regarding what accounts were searched or what terms were used. Defendant concludes this portion of its response by noting that counsel instructed Defendant to search for paper documents, but Defendant could not identify additional responsive documents.

Defendant is using broad strokes and vague language to gloss over specific deficiencies identified by the testimony of its own employees, as detailed in Plaintiff's motion. Former employees Amanda White and Pam Smith specifically testified that written complaints by Sutton, who lived in Unit 2 at the Wood Lane apartments in Greensburg, KY, were stored in a paper tenant / unit number file located at the Wood Lane complex. Doc. No. 26-9, Page ID# 196-97, 200. Neither Defendant's supplemental responses, its 2/17/26 letter, nor its response to Plaintiff's motion mentions this testimony or indicates that it checked the tenant / unit # file at Wood Lane. Defendant was instead vaguely told by counsel to "conduct a search for any responsive materials which may exist in paper format." Doc. No. 28, Page ID 259. Nowhere does Defendant make the simple assertion, as seemingly required by the Court's order, that Defendant did search for or check the file at Wood Lane (including who searched the file and on what date). Similarly, White clearly testified that she scanned Sutton's complaints and uploaded them to the electronic YARDI system. Doc. No. 26-9, Page ID# 196-7. Nowhere amongst Defendant's supplemental responses, letter or motion response is there a representation that Defendant was told to search the YARDI system or that someone did so (including who searched and on what date).

Defendant having failed to demonstrate it met its obligations to conduct a reasonable search for responsive documents, this Court should compel Defendant to search relevant custodian email accounts, the YARDI electronic system, and the tenant files of Jennifer Taylor and Elisha Sutton, with all ESI searches conducted by or in conjunction with a qualified information technology (IT) professional and using appropriate search terms.

11

### III. Defendant's response openly defies the court's order regarding form of production and falsely represents it has complied with the court's order.

With respect to form of production, Defendant does not dispute it has failed to provide a load file as required by paragraph 2 of the Court's 1/13/26 order. Defendant's response vaguely offers that defense counsel "conveyed it was unable to create Opticon or .DAT files but was able to convert previously produced .pdf files and emails in TIFF format with 300 DPI resolution." Doc. No. 28, Page ID# 260.[6] Such is not an explanation for the absence of a load file. Nor has any explanation ever been provided for the absence of native emails from Wardle's period of employment or what Defendant has done to search for such emails.[7]

Instead of explaining why a load file was not produced and/or why no native emails from Wardle's period of employment have been produced, Defendant seemingly asserts that the Court's order violated the Federal Rules of Civil Procedure, thus Defendant was not obligated to follow it. Specifically, Defendant asserts in a heading at p. 21 of its response that the "EEOC's ESI and Native Formatting/Load File Requirements Exceed the Permissible Scope of FRCP 26." Doc. No. 28, Page ID# 260. But the paragraphs that follow offer no support for Defendant's position. Defendant cites no case in which the EEOC's Form of Production / Load File Specifications (Doc.

---

[6] It should be clarified that Defendant's 2/17/26 production, produced in response to this Court's 1/13/26 order, was not in TIFF format, whatsoever. Defendant appears to be referring to its previous, deficient production on 7/25/25, which was *partly* in TIFF format. Inexplicably, Defendant produced documents at that time in a mixed format, where the first page of the document was in TIFF format and the subsequent pages were in PDF format. Then, as now, Defendant failed to produce a load file.

[7] Well over a year into discovery, Plaintiff has little to no information about GEM Management's ESI practices or capabilities, be it about GEM's ability to generate load files, how emails and other ESI are kept in the ordinary course of GEM's business, or GEM's ability to recover and produce relevant emails in their native format. Defendant has never identified an ESI liaison at GEM (or defense counsel's firm) nor made clear representations about how GEM stores and retrieves ESI. At this late date, all Plaintiff and the Court have to go on in evaluating Defendant's failure to comply with the requested form of production are vague and confusing representations by defense counsel. It is unclear if these representations refer to counsel's ESI limitations or GEM's.

No. 26-7), nor anything similar to them, has been found to exceed the scope of Rule 26. Indeed, defense counsel's own firm has agreed to substantially similar form of production / load file specifications before this very court. See Exhibit 1, *Bizzack Construction, LLC v. TRC Engineers, Inc.*, E.D. Kentucky Case No. 5:20-cv-00084-KKC, September 21, 2022 Stipulated Order Regarding Discovery of Electronically Stored Information.

With respect to the Court's 1/13/26 order that Defendant "must re-number all documents provided thus far with sequential Bates stamp numbers that demonstrate parent-child relationships" and that "no bates stamp numbers will be duplicative" (Doc. No. 22), Defendant repeatedly states that it re-produced all documents previously produced in compliance with the Court's order. These are false representations. On July 25, 2025, Defendant produced Bates #s 1 through 3316. See Exhibit 2. On February 17, 2026, Defendant "Reproduced Pursuant to 1/13/26 Court Order Gem Management, LLC" Bates #s 1 through 875. See Exhibit 3. If 3316 pages of documents were produced on July 25, 2025, how could the production of 875 pages of documents on February 17, 2026 be a re-production and re-numbering of everything produced thus far? Defendant's response also fails to address or explain its mistake of giving different documents the same Bates numbers within its February 17 production. Doc. No. 26-11 and Doc. No. 26-12.

IV.    **Defendant fails to meet its burden to prove ESI production will be unduly burdensome.**

Defendant argues the EEOC's motion should be denied because it will be unduly burdensome to re-produce documents a third time. Doc. No. 28 at PageID# 261-62. In support, Defendant vaguely refers to the "costs and expenses associated with retention and utilization of a third-party document management company" to process the ESI. *Id.* at PageID# 262. But, "[a] party objecting to a request for production of documents as burdensome must submit affidavits or other evidence to substantiate its objections." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021), *quoting Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D.

13

Mich. 2017). Defendant failed to do so, instead offering "bald generalizations [and] a conclusory assertion that production will be … expensive," which is insufficient to meet Defendant's burden. *Id.*, quoting Hon. Craig B. Shaffer, The "Burdens" of Applying Proportionality, 16 Sedona Conf. J. 55, 93 (2015).

Moreover, only Defendant is to blame for its expenses in reproducing documents, as it failed to produce documents in the EEOC's requested format from the start, without making any objection to the EEOC's ESI specifications or moving for a protective order. *See E.E.O.C. v. SVT, LLC*, No. 2:13-CV-245-RLM-PRC, 2014 WL 1411775, at *4 (N.D. Ind. Apr. 10, 2014) (rejecting undue cost argument where defendant erred by not objecting or seeking a protective order based on its purported inability to comply with the EEOC's ESI specifications); Fed. R. Civ. P. 34 (2006 advisory committee notes) ("A party that responds to a discovery request by simply producing [ESI] in a form of its choice … runs a risk that the requesting party can show … that it is entitled to production of some or all of the information in an additional form.").

To the extent Defendant also suggests a third party vendor is required to fully respond to the EEOC's discovery requests—that is, to collect and search the relevant custodian email accounts— and that such an expense would be unduly burdensome, Defendant has also failed to demonstrate this burden, and courts support the requirement to retain e-discovery liaisons when necessary to assist counsel who are uninformed about, or overwhelmed by, the demands of ESI discovery. *See, e.g.*, *Waskul*, 569 F. Supp. 3d at 636.

**V.    Plaintiff's motion is timely.**

Defendant cites *Arnott v. Ashland Hospital Corp.,* 2016 WL 7974071 (E.D. Ky. April 14, 2016) for the proposition that Plaintiff's motion is untimely. That case does not support Defendant's contention. In *Arnott*, the discovery at issue was served on Defendant eight days before the close of discovery. The Court denied the plaintiff's motion to compel, deeming the requests unenforceable

because they had not been served at least 30 days before the close of discovery, robbing the defendant of the time afforded it to respond under FRCP 33(b)(3) and 34(b). See *Arnott*, 2016 WL 7974071, at *2. Here, the discovery requests at issue were served on January 13, 2025 and June 18, 2025 – over 10 months before the close of discovery. Defendant's responses to the latter set of requests were due in July 2025 – some 9 months before the close of discovery. Plaintiff initiated the process that eventually led to this motion to compel as far back as September 2025, when it first requested a telephonic conference with the Court. A provisional order was entered during discovery, and the pending motion was filed prior to the close of discovery. Therefore, Plaintiff's motion is timely.

## CONCLUSION

Defendant fails to demonstrate it complied with the Court's January 13, 2026, order or met its obligation to use reasonable efforts to locate and produce responsive ESI. Plaintiff's motion to compel should be granted, and Defendant should be ordered to pay Plaintiff's costs and attorney's fees in bringing this motion.

Respectfully submitted,

/s/ Miles L. Uhlar
Miles L. Uhlar
EEOC – Detroit Field Office
477 Michigan Ave., Room 865
Detroit, MI 48226
(313) 774-0015
miles.uhlar@eeoc.gov

Alysia Robben, Trial Attorney
EEOC – Louisville Area Office
600 Dr. Martin Luther King Jr. Place,
Suite 268
Louisville, Kentucky 40202
(502) 694-3976 (direct)
alysia.robben@eeoc.gov

15