**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **NO. 5:24-CV-00199-GFVT-MAS** |
| **v.** | ) ) | |
| **GEM MANAGEMENT, LLC,** | ) ) | |
| **Defendant.** | ) ) ) | |

**MEMORANDUM OPINION & ORDER**

Defendant GEM Management, LLC ("GEM") manages several apartment complexes. Rebecca Wardle alleges that, during her employment with GEM, Jerry "Travis" Burns, another GEM employee, sexually harassed her. Plaintiff Equal Employment Opportunity Commission's ("EEOC") filed this lawsuit on Wardle's behalf. The parties have been embroiled in a discovery dispute over GEM's responses to EEOC's written discovery.

The Court conducted a telephonic status conference on January 13, 2026, and its resulting Provisional Order gave the parties leave to file discovery motions as needed. [DE 22]. GEM produced additional discovery in response to the Provisional Order, but EEOC determined the production did not satisfy the Provisional Order and filed the instant Motion to Compel. For the reasons stated below, EEOC's motion will be largely granted, with a few minor exceptions.

## I.   ANALYSIS

The parties have not resolved any of the disputes the Court addressed in its Provisional Order at DE 22.  EEOC presented a lengthy list of discovery failures by GEM.  GEM counters that it has satisfied both the requirements of the Federal Rules of Civil Procedure and the Court's Provisional Order.  In general, EEOC alleges GEM failed to provide complete and accurate answers to Interrogatories, failed to conduct proper searches for ESI that is responsive to its Requests for Production of Documents, failed to produce ESI in native or TIFF format with a load file, and failed to produce documents with accurate, sequential Bates Stamps.  The Court takes each dispute in turn, below.

### A.   INTERROGATORY NO. 16

> For each property identified in response to Interrogatory No. 15, identify each tenant for the period of April 1, 2022, to April 25, 2023, by stating the individual's name, property unit number, last known address, last known telephone number, and dates of tenancy.

EEOC complains GEM provided unrequested information, listed the phone number for tenant Elisha Sutton as "unknown", and failed to provide any phone number for tenants from the Oak View Apartments.  "Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. . . . If a party is unable to supply the requested information, . . . [the party] must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information."  *Hendricks v. Ohio Dept. of Rehabilitation and Correction*, 2012 WL 2075317, at *4 (S.D. Ohio, June 8, 2012) (citations and quotation marks omitted).  To the extent there is

additional responsive information in GEM's possession, custody, or control, EEOC's motion to compel is granted.  GEM must explain any missing information in a supplemental, verified response.

## B.    INTERROGATORY NO. 18

Identify all complaints made by any tenant, employee of GEM Management, LLC, or other individual about Jerry "Travis" Burns during his employment with Defendant, including, but not limited to, complaints by site managers and/or tenants at the Oakview, Greensburg, and/or Churchwood apartments, and including, but not limited to, all sexual harassment complaints referenced in the January 13, 2023, Employee Coaching for Jerry "Travis" Burns (see EEOC_0000323), by stating for each:

a. The date of the complaint;

b. The name, last known address, and last known telephone number of the individual who made the compliant;

c. The method, and to whom, the complaint was made;

d. The nature and substance of the complaint; and

e. A summary of the steps taken by Defendant in response to the complaint, including the names of all Defendant employees involved in those responsive steps.

EEOC complains that GEM did not include complaints made by Sutton, which would be responsive and multiple GEM employees testified about.  GEM responds that it "has undertaken efforts to identify any electronic and/or handwritten responsive complaints, and provided that information which was responsive to the EEOC's Interrogatory."  [DE 28 at Page ID# 250].  Interrogatory No. 18 does not limit the request to "electronic and/or handwritten responsive complaints."  GEM may not unilaterally narrow the scope of the request.  *Avantax Wealth Management, Inc. v. Marriott Hotel Services, Inc.*, 2022 WL 18638754, at *4 (M.D. Tenn., Sept. 28, 2022).

("Nor is it within the purview of a party responding to discovery, as Marriott has done in this case, to define for itself terms used in discovery requests[.]").  GEM is compelled to produce any additional responsive information, regardless of if it is a "electronic and/or handwritten."  To the extent the EEOC simply complains that the response to Interrogatory No. 18 is inconsistent with witness testimony, the Court cannot compel GEM to provide consistent evidence.

**C.    INTERROGATORY NO. 19**

> Identify all individuals who lived in Unit 2 at the Greensburg Apartments in January 2023, by stating each individual's full name, last known address, and last known telephone number, and state and describe the reason  Jerry "Travis" Burns was instructed in January 2023 to not go into the unit without a site manager (see EEOC_0000323).

EEOC claims GEM's answer to Interrogatory No. 19 is insufficient on two fronts: first, that the information is inaccurate because it conflicts with information provided in Interrogatory No. 16, and second, that GEM has failed to provide the contact information requested.  The Court expects the parties to answer discovery accurately and honestly.  While conflicting information raises concerns, the Court has no information that the sworn responses are inadequate or inaccurate (and can certainly think of reasons they could be accurate).  EEOC's second complaint, that GEM did not provide contact information, seems to be premised on the belief that the individual listed in the response is not who EEOC expected.  GEM provided contact information for the individual listed in its answer to Interrogatory No. 19.  The Court denies EEOC's motion as to this Interrogatory.

Page **4** of **16**

**D.**   **INTERROGATORY NO. 20**

Identify every occasion on which the police, or other law enforcement, were called because of the activities or actions of Jerry "Travis" Burns at one of Defendant's properties, including but not limited to the incidents referenced in GEM_ 000010 —GEM_ 000014, as produced in response to Plaintiff's first Requests for Production of Documents.

Please include:

a. The date police or law enforcement were contacted;

b. Which property the call related to;

c. The identity and contact information of the person who contacted the police or law enforcement;

d. All Defendant employees who had knowledge during Burns' employment of the call to the police or law enforcement;

e. Defendant's understanding of the events that led to the police or law enforcement being contacted; and,

f. A summary of all responsive steps taken in response to the police or law enforcement being contacted, including the names of all Defendant employees involved in those responsive steps.

The Court agrees that GEM has not adequately answered this Interrogatory.

GEM complains that "EEOC assumes, improperly, that any phone call made to law enforcement regarding Jerry 'Travis' Burns originated from one of the Defendant's employees" and therefore GEM must have information it did not disclose. [DE 28 at Page ID# 252]. GEM points to documents turned over in discovery to answer Interrogatory No. 20; this is permitted so long as the documents, in fact, answer the Interrogatory. That is not the case here. For example, because GEM disclosed three 911 dispatch reports in its discovery, it stands to reason they have information about "[a]ll Defendant employees who had knowledge during Burns' employment of the call to the police or law enforcement". [*See* DE 26-1 at Page ID# 118]. GEM is compelled

to provide that information.  If GEM lacks the information to make specific answers to Interrogatory No. 20, GEM must verify as much and "set forth in detail the efforts it made to obtain the information." *Journey Acquisition-II, L.P. v. EQT Production Company*, 2014 WL 12650100, at *2 (E.D. Ky., 2014) (quoting *Miller v. Doctor's General Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977)).

### E.    INTERROGATORY NO. 21

State the following with respect to Defendant's employees Angela Stewart, Stormy Mongiello, Pam Smith, Alex Lawrence, DeVaughn Frazier, Lauriann Whack, Parker Huffman, and Jerry "Travis" Burns:

a. Current employment status and title of each individual;

b. Date and reason for separation, if applicable;

c. If no longer an employee, last know address, phone number, and email address;

d. Each individual's company email address;

e. A description of steps taken to recover responsive emails from each individual's company email account;

f. The year, make, model, and phone number of any company issued portable electronic device (mobile phone, iPad, tablet, etc.) issued to each individual by Defendant;

g. The date each device was issued to the individual;

h. The year, make, model, and phone number of any personal portable electronic device (mobile phone, iPad, tablet, etc.) which the individual used, at any time, to conduct business for, or

perform work on behalf of, Defendant;

i. The time period(s) during which the individual used each personal device to conduct business

or perform work for Defendant;

j. The current location of any device(s) identified above; and,

k. A description of all efforts taken to recover responsive electronically stored information (ESI)

from each device identified above.

Interrogatory No. 21 requests eleven sub-categories (categories a though k) of information, such as employment status and email address, for eight of GEM's current or former employees. GEM provided information, including some general denials of available information, for all categories except category "e," which requests "[a] description of steps taken to recover responsive emails from each individual's company email account." The Court has already ordered GEM to "answer all subparts of Interrogatory No. 21 or state a valid objection thereto." [DE 22]. GEM is compelled to answer subsection e.

EEOC also claims GEM provided inaccurate information, namely, the wrong email addresses, in its response to Interrogatory No. 21. [DE 26-1 at Page ID# 112]. GEM did not respond to this argument. The Federal Rules obviously require responses to include accurate, complete information. EEOC has made a compelling argument that GEM provided one email address for each listed employee when those employees likely had two email addresses provided by GEM. GEM is compelled to provide a complete response, including all company email addresses, or provide a response to EEOC's argument that the email addresses provided were the sole company email addresses used by the eight individuals listed in Interrogatory No. 21.

EEOC raises several other complaints about GEM's response to Interrogatory No. 21, including ESI terms and the number of documents produced. These complaints do not relate to the information requested in Interrogatory No. 21. The

Court denies the motion to compel as to all other complaints EEOC raises regarding Interrogatory No. 21.

## F.   REQUESTS FOR PRODUCTION OF DOCUMENTS 5, 13, 14, 15, 16, 23, AND 26

Regarding Requests for Production of Documents Nos. 5, 13, 14, 15, 16, 23, and 26, GEM's failures in its productions after the Court's Provisional Order at DE 22 are too egregious and numerous to take on individually.   The Court's Provisional Order required GEM to "provide a list of custodians whose devices were searched, a list of each device in the possession of each custodian, and a list of the search terms and dates used as well as the methodology to collect the responsive electronically stored information (ESI)" and "produce responsive documents, including documents that may be maintained in paper or that would be revealed in a proper search of ESI. If there are no additional responsive documents, GEM must state that fact as well as what searches were conducted."  [DE 22].  EEOC complains that

> [o]ver the past ten months, Plaintiff repeatedly asked GEM to propose search terms for ESI so Plaintiff could respond with suggestions and the parties could cooperatively find a workable plan for email searches and production. Plaintiff also repeatedly suggested the parties make use of liaisons with IT / ESI expertise. . . . GEM repeatedly refused or failed to do either.

[DE 26-1 at Page ID# 108].  EEOC requests the Court provide a list of required search terms and allow EEOC to submit a bill of costs.

The Court agrees that GEM's efforts were woefully insufficient.  EEOC has provided a surfeit of evidence that GEM's searches should have included additional search terms (for example, the term "Travis" was excluded despite being the name the alleged harasser went by), that obviously responsive documents in EEOC's

possession were not produced (for example, a forwarded email but not the original email [DE 26-1 at Page ID# 104, n.1]), and that GEM employees testified about several emails or categories of emails that have not been produced. [DE 26-1 at Page ID# 110].

GEM responds to EEOC's complaints by repeatedly stating that it has "complied with the scope set forth per FRCP 34(a)(1)" and blaming lost documents on switching third-party human resources provider. Notably, EEOC does not raise the third-party human resources provider issue. On the teleconference with the Court on January 13, 2026, EEOC accepted GEM's explanation for that category of documents that could not be produced. Otherwise, GEM points to Exhibit 4 to DE 28 to explain its compliance with the Provisional Order. Exhibit 4 purports to explain GEM's methodology and search terms. This methodology and search terms are inadequate and do not meet the generally accepted electronic discovery standards of our time. GEM does not supply a list of custodians. GEM did not supply a date range for its search. GEM's list of search terms is largely a list of who the Court presumes to be custodians. GEM's additional search terms are primarily the names of GEM employees plus "charge of discrimination" or similar. GEM's "methodology explanations" include: "[r]egarding the issue of search methodology, in June 2025 it was requested that GEM undertake an email search of the following search terms"; "the following specific searches were requested to be completed"; and "it was requested that a specific search for any responsive materials applicable to this request for production be conducted cumulatively utilizing all search terms

referenced in this correspondence." [DE 28-4, Exhibit 4, Letter dated February 17, 2026]. GEM's use of passive voice throughout its description of its methodology is curious, to say the least. The Court agrees with EEOC that the February 17, 2026, letter "appears to admit that GEM used these individuals' names as search terms rather than treat them as custodians" and that "GEM apparently engaged in self-collection." [DE 26-1 at Page ID# 104].

"[A] general understanding has emerged among the district courts that have addressed the issue: the producing party is 'in the best position to determine the procedures, methodologies, and technologies appropriate for producing [its] own ESI.'" *Allergan, Inc. v. Revance Therapeutics, Inc.*, 2025 WL 1013987, at *3 (M.D. Tenn., 2025) (quoting *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2022 WL 20359241, at *13 (D.N.J. Feb. 8, 2022). "The district court should generally not play a role in dictating the design of a search, choosing search tools, selecting search terms, or designating custodians, unless a responding party's choice 'is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient.'" *Commins v. NES Rentals Holdings, Inc.*, 2018 WL 3186983, at *3 (W.D. Ky., 2018) (quoting *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N. Y May 18, 2017)). GEM's methodologies, search terms, dates (undisclosed), and custodians (also undisclosed) are manifestly unreasonable and EEOC has demonstrated with specific evidence that the resulting production is deficient. GEM's letter of February 17, 2026, is missing the information the Court already ordered be disclosed and treats the search of

GEM's email and computer systems as little more than a casual "Ctrl+F" exercise among current GEM employees. "[A]n attorney may not simply rely on custodian self-collection of ESI. Instead, counsel must 'test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced.'" *Waskul v. Washtenaw Cnty. Community Mental Health*, 569 F.Supp.3d 626, 636 (E.D. Mich., 2021) (quoting *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 926 (N.D. Ill., 2021).

For these reasons, the Court orders the parties to exchange proposed ESI discovery plans within seven (7) days of this Memorandum Opinion and Order. As stated in the Court's Provisional Order at DE 22, the plans must include proposed: (1) proposed custodians; (2) each device in the possession of each custodian (GEM must specifically state whether each custodian had a company-issued phone in his/her possession); (3) proposed search terms; (4) proposed dates; (5) proposed methodology. The parties must file their proposed plans in the record. The parties have twenty-one (21) days from the date of this Memorandum Opinion and Order by which to agree on ESI protocols and file a joint status report with the Court.

EEOC's request to file a bill of costs is denied. However, EEOC may reraise the motion if GEM fails to cooperate in discovery going forward.

### G.   REQUEST FOR PRODUCTION OF DOCUMENTS NO. 17

EEOC states that GEM did not comply with the Court's Provisional Order requiring GEM to respond to Request for Production of Documents No. 17 and any related Interrogatories. GEM did not respond to this allegation. The Court compels

GEM to respond to Request for Production of Documents No. 17 and any related Interrogatories. *See Humphrey v. U.S. Attorney General's Office*, 279 Fed. App'x 328, 331 (6th Cir. 2008) (failure to oppose arguments waives them).

## H.     FORMAT OF PRODUCTION

The Court's Provisional Order required GEM to produce responsive ESI in native or TIFF format with the load file. [DE 22]. EEOC stated that GEM "has produced only 22 emails in native form. . . . The remaining few emails were produced as PDF files. Aside from a few Excel spreadsheets and .JPG files, all other documents Defendant produced were in PDF format. Further, Defendant did not produce a load file." [DE 26-1 at Page ID# 113]. GEM contends it has "attempted to comply" with the Court's Provisional Order.[1] [DE 28 at Page ID# 260]. GEM also quotes FED. R. CIV. P. 34(b)(2)(E)(ii), arguing that it should not have to produce its documents in the format specified by the Court because the Federal Rules do not require native or TIFF format, they only require that the producing party "produce documents as they are kept in the usual course of business." GEM was selective in its quotation of Rule 34(b)(2)(E), which, in its entirety, states:

> (E) Producing     the     Documents     or     Electronically     Stored Information. **Unless otherwise stipulated or ordered by the court**, these procedures apply to producing documents or electronically stored information:
>
>     (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

---

[1] "the Defendant has attempted, in good faith, to comply"; "In an attempt to comply"; and "attempted to comply" [DE 28 at Page ID# 260].

(ii) ***If a request does not specify a form*** for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

FED. R. CIV. P. 34(b)(2)(E) (emphasis added).

EEOC requested ESI be "produced in single-page TIFF format with a delimited DAT file containing certain metadata fields outlined in the EEOC's form of production document[.]" [DE 28-1 at Page ID# 264]. The Advisory Committee Notes offer the following warning to litigants who choose to produce ESI in a format other than requested format without consultation with the requesting party:

> Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.

FED. R. CIV. P. 34 Advisory Committee's Note on 2006 Amendments.

"District courts have broad discretion under the rules of civil procedure to manage the discovery process[.]" *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014). GEM's response implicitly acknowledges that it merely "attempted to comply" rather than *actually complied* with the Court's Provisional Order. It has not explained its failure to produce a load file. It has not explained its production of PDF files rather than native or TIFF files. Rule 34 specifically permits a Court to compel production of ESI in a particular format, and district courts in the Sixth

Circuit have not hesitated to do so. *See Equal Employment Opportunity Commission v. Gypsum Express, L.T.D.*, 345 F.R.D. 442 (E.D. Ky., 2024) (requiring defendant to reproduce documents in the requested format) and *Siser North America, Inc. v. Herika G. Inc.*, 325 F.R.D. 200 (E.D. Mich., 2018) (requiring defendant to reproduce more than 15,000 pages of documents  originally produced in PDF rather than pass the cost of conversion on to the plaintiff).

GEM argues "[t]o the extent the Defendant has produced the subject materials in their native format, the EEOC's Motion should be overruled." [DE 28 at Page ID# 261]. In principle, the Court agrees. "Once a party demonstrates that it has produced discovery in the form it is maintained in the ordinary course of business, the party has met the requirements of Rule 34." *Terrell v. Memphis Zoo, Inc.*, 2018 WL 3245003, at *8 (W.D. Tenn., 2018). However, GEM has not demonstrated that its productions were in the form maintained in the ordinary course of business. PDF is not native format for most documents. Common sense dictates that the emails GEM produced as PDFs are not the native format of emails nor are they maintained that way in the ordinary course of business. To the extent GEM has produced documents in their true native format, the motion to compel is denied, subject to reproduction under Section I, below. For all other documents, the Court compels GEM to reproduce all documents in their native format or as TIFF files and produce a load file.

## I.    BATES STAMP NUMBERS

"A good litigator will systematically Bates Stamp all documents involved in a particular case as he or she determines them to be discoverable. This method of pagination virtually eliminates ambiguity or outright confusion in document

identification." *Hollowell v. T.RAD North America, Inc.*, 2024 WL 6893276, at *1 (W.D. Ky., June 28, 2024) (quotation marks and citation removed). EEOC contends GEM reproduced only 875 pages of the original 3,153 pages produced and did not explain the discrepancy. EEOC further argues the documents that were reproduced still had Bates Stamp numbering errors, and that "not only do the 'new' documents start at # 311 when they should have started at #3154, but they are also labeled the same as the 'Reproduced' set." [DE 26-1 at Page ID# 114]. GEM argues it has complied with the Court's Provisional Order requiring it to reproduce all documents with one set of consecutive Bates Stamp numbers. GEM believes EEOC should "undertake the costs and expenses associated with retention and utilization of a third-party document management company for the purpose of processing the electronic materials the Defendant has produced in this case." [DE 28 at Page ID# 262]. Primarily, GEM argues that it is unduly burdensome for it to have to reproduce the Bates Stamped documents a third time. GEM incomprehensibly seeks to blame EEOC, or the Court, or its third-party document management company for the costs it is running up in producing and reproducing its Bates Stamped documents. This deflection does nothing but highlight who is at fault for the rising costs of this litigation: GEM. If GEM would like to confine litigation costs in the future, the Court suggests doing it right the first time.

The Court grants EEOC's motion to compel reproduction of all documents with sequential Bates Stamp numbers. GEM may comply by numbering all previously

produced pages and all future discovery beginning with GEMLLC_00001, GEMLLC_00002, etc.

## II.    CONCLUSION

**IT IS ORDERED** that EEOC's Motion to Compel [DE 26] is **GRANTED IN PART** and **DENIED IN PART** as set forth above.  Additionally, Plaintiff's Motion for Status Conference [DE 32] is **GRANTED**.  Upon filing of the joint status report ordered in Section F above, the Court will schedule a teleconference to discuss case management.

Signed this the 15th of May, 2026.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY